1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   MELISSA FAIRFIELD,                    CASE NO. 1:07-cv-01412-LJO-SKO PC

10                        Plaintiff,      FINDINGS   AND   RECOMMENDATIONS
                                          RECOMMENDING DISMISSAL OF CERTAIN
11          v.                            CLAIMS

12   DEBORAH PATRICK, et al.,             (Doc. 16)

13                        Defendants.
                                      /
14

15          Plaintiff Melissa Fairfield ("Plaintiff") is a state prisoner proceeding pro in this civil rights

16   action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of the California Department of

17   Corrections and Rehabilitation ("CDCR") and is incarcerated at the Central California Women's

18   Facility ("CCWF") in Chowchilla, California.  Plaintiff names Deborah Patrick (warden), Miles

19   Bettencourt (supervisor), Dale Clayton (associate warden), Rob Chenault (chief plant manager),

20   Mary Lattimore (chief deputy warden), Bruce Hubble (chief plant manager), T. Arreallano (inmate

21   assignment lieutenant), and Toni Brown (inmate appeals coordinator) as defendants.  For the reasons

22   set forth below, the Court finds that Plaintiff's second amended complaint states cognizable claims

23   against Defendants Chenault and Clayton for retaliation in violation of Plaintiff's First Amendment

24   rights.  The Court finds that Plaintiff's second amended complaint fails to state any other claims and

25   will recommend that Plaintiff's non-cognizable claims be dismissed, without leave to amend.

26   I.     **Screening Requirement**

27          The Court is required to screen complaints brought by prisoners seeking relief against a

28   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

1 Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

2 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

3 monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

4 "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

5 dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

6 claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

7      In determining whether a complaint fails to state a claim, the Court uses the same pleading

8 standard used under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must

9 contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

10 R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual

11 allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

12 accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

13 Twombly, 550 U.S. 544, 555 (2007)).  "[A] complaint must contain sufficient factual matter,

14 accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550

15 U.S. at 570).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's

16 liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id.

17 (quoting Twombly, 550 U.S. at 557).  Further, although a court must accept as true all factual

18 allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.

19 Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

20 statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).

21 **II.   Background**

22     **A.   Procedural Background**

23      Plaintiff filed the original complaint in this action on September 27, 2007.  (Doc. #1.)

24 Plaintiff's original complaint was screened pursuant to 28 U.S.C. § 1915A(a) on July 15, 2008.

25 (Doc. #12.) The Court found that Plaintiff's original complaint failed to state any cognizable claims.

26 Plaintiff was notified of the deficiencies in her claims and was given leave to file an amended

27 complaint.  Plaintiff filed a first amended complaint on August 7, 2008.  (Doc. #13.) Plaintiff's first

28 amended complaint was screened on February 18, 2010.  (Doc. #15.)   The Court found that

Plaintiff's first amended complaint failed to state any cognizable claims and Plaintiff was given leave to file a second amended complaint. Plaintiff filed her second amended complaint on March 15, 2010. (Doc. #16.) This action proceeds on Plaintiff's second amended complaint.

### B.   Factual Background

Plaintiff alleges that Defendants lowered her pay grade. On September 22, 2006, Plaintiff was assigned to "Plant Operations" as a "Lead Plumber." (Am. Compl. 3, ECF No. 16.) Plaintiff complains that she should have been given a "pay grade 1" but was instead given a "pay grade 2." Plaintiff asked numerous officials about the incorrect pay grade but did not receive any explanation.

In January 2007, Plaintiff heard rumors from other inmates that the pay grades were going to be lowered to be in-line with the pay grades at Valley State Prison for Women. Plaintiff spoke with Defendant Miles Bettencourt about her pay grade. When Bettencourt told Plaintiff that she did not deserve a "pay grade 1," Plaintiff insisted that she met the criteria for the higher pay grade. Bettencourt also informed Plaintiff that "the men don't make what the women make, they make more, and that the pay grades at CCWF would be lowered to a pay grade 5."[1] (Am. Compl. 4, ECF No. 16.)

On February 12, 2007, Plaintiff spoke with Defendant Rob Chenault about the pay grades. When Plaintiff complained about the disparity in pay between male and female inmates, Chenault told Plaintiff that "females don't have it hard like the men do."

Plaintiff filed an inmate appeal about the issue. On March 6, 2007, Chenault told Plaintiff that she would be removed from plant operations before he retired. Plaintiff filed another appeal because she felt like she was being intimidated for filing an appeal.

Plaintiff's was interviewed by Defendant Dale Clayton on March 23, 2007. Plaintiff alleges that Clayton used "verbal and physical intimidation . . . in order to coerce [Plaintiff] into dropping the issue." (Am. Compl. 6, ECF No. 16.) When Plaintiff asked Clayton about the pay disparity between male and female prisoners, Clayton did not listen to Plaintiff's complaints. Plaintiff's

---

[1]It is unclear who broached the subject of the unequal pay first. Plaintiff does not allege that she complained to Bettencourt about the unequal pay, but it is unclear why Bettencourt would bring up the subject if Plaintiff did not mention it first.

1  appeal was denied and the denial indicated that Plaintiff "did not perform lead work." (Am. Compl.

2  6, ECF No. 16.)

3      On May 3, 2007, Clayton authored a memorandum which instructed prison officials to delete

4  all "lead" verbiage from the "Plant Operations Job Descriptions." (Am. Compl. 7, ECF No. 16.)

5  Plaintiff alleges that the response was in direct retaliation against Plaintiff for her appeal. Plaintiff

6  alleges that her second level appeal was denied by Defendants T. Brown and Mary Lattimore.

7      Plaintiff also complains that multiple notices regarding the issue were ignored by the warden

8  and associate wardens. Plaintiff alleges that Defendant T. Brown responded to one request and

9  indicated that she was not qualified to respond to Plaintiff's inquiries because she has no knowledge

10 about the systems in place at the prisons that house men. Plaintiff complains that she could have

11 acted as a "liason for the state of California in regards to an innmates[sic] eligibility for and

12 availability of desired work or program activity." (Am. Compl. 8, ECF No. 16.)

13     Plaintiff complains that Defendant T. Arellano "should have been aware of the different skill

14 levels and pay grades at CCWF." (Am. Compl. 8, ECF No. 16.) Plaintiff complains that Arrellano

15 could have looked up Plaintiff's job history and known that the references to "lead" positions was

16 removed.

17     Plaintiff alleges that Defendant Bruce Hubble "was on board with the reduction of 'lead'

18 positions." (Am. Compl. 9, ECF No. 16.)

19     Plaintiff complains that Bettencourt later stated that the job positions were revised such that

20 all positions in plant operations were classified as "semi-skills" and were given the title of "helper"

21 as opposed to "lead." (Am. Compl. 11, ECF No. 16.) Plaintiff complains that the change was unfair

22 because "it doesnt[sic] matter how well we know the trade we will always be recognized as not

23 special skilled, lead, technician." (Am. Compl. 11, ECF No. 16.)

24     Plaintiff alleges that on October 27, 2009, Defendant Hubble had Defendant Arellano remove

25 Plaintiff from the plumbing shop "for retaliation for trying to coerce me to sign documentation that

26 he believed pertained to safety of my job, which I added an additional addendum stating 'under

27 implied retaliation.'" (Am. Compl. 12, ECF No. 16.) Plaintiff's allegation of retaliation is unclear.

28 ///

4

1    **III.    Discussion**

2        Plaintiff does not identify her causes of action.  Although Plaintiff filed her complaint on a

3    form complaint for Section 1983 actions, Plaintiff does not identify what specific rights Defendants

4    allegedly violated.  For the purposes of analyzing Plaintiff's complaints, the Court will liberally

5    construe Plaintiff's complaint as raising claims under Section 1983 for the violation of her equal

6    protection rights under the Fourteenth Amendment and raising claims of retaliation in violation of

7    her First Amendment rights.

8        **A.    Equal Protection Claims**

9        The Equal Protection Clause requires that persons who are similarly situated be treated alike.

10   City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  A classification that

11   is drawn on the basis of gender calls for "a heightened standard of review."  City of Cleburne, Tex.

12   v. Cleburne Living Center, 473 U.S. 432, 440 (1985).  To justify the classification and disparate

13   treatment of persons based upon their gender, the classification must have "exceedingly persuasive"

14   justification.   U.S. v. Virginia, 518 U.S. 515, 533 (1996).   The state must show that the

15   "classification serves 'important governmental objectives and that the discriminatory means

16   employed' are 'substantially related to the achievement of those objectives.'" Mississippi University

17   for Women v. Hogan, 458 U.S. 718, 724 (1982) (quoting Wengler v. Druggists Mutual Ins. Co., 446

18   U.S. 142, 150 (1980)).  However, "official action will not be held unconstitutional solely because

19   it results in a racially disproportionate impact. . . .  Proof of . . . discriminatory intent or purpose is

20   required to show a violation of the Equal Protection Clause."  Village of Arlington Heights v.

21   Metropolitan Housing Development Corporation, 429 U.S. 252, 264-65 (1977).

22       Plaintiff's complaint fails to allege facts that plausibly support the conclusion that Defendants

23   acted with discriminatory intent or purpose by refusing to give Plaintiff a raise to "pay grade 1" and

24   stripping Plaintiff of the "lead" status in her job position.  The Court notes that every defendant is

25   employed at CCWF, an institution that presumably only houses female inmates.  Accordingly, any

26   assertion that Defendants provided disparate treatment to Plaintiff on the basis of her gender is

27   contradicted by the fact that Defendants do not provide any "treatment" to male inmates.  Defendants

28   do not supervise any male inmates.  The inference that Defendants act with discriminatory intent or

purpose merely because their actions only affect members of one gender is not well supported

because the single-gender impact of their actions is an unavoidable product of the fact that they work

an institution that only houses female inmates.  To infer a discriminatory intent or purpose merely

from the fact that their administrative decisions only impact female inmates would subject every

decision that Defendants make to potential liability under the Equal Protection Clause.

To support a plausible claim for relief for an equal protection violation, Plaintiff must

specifically allege facts that support the inference that Defendants acted with discriminatory intent

or purpose.  Plaintiff has failed to do so.  Plaintiff has not even alleged that Defendants were aware

of a disparity in pay between men and women when they made the decision to reduce the wages paid

at CCWF.  Plaintiff has not alleged that Defendants knew what male inmates in equivalent job

positions were paid when they made their decision to reduce the wages at CCWF.  Plaintiff alleges

that Defendants reduced the wages at CCWF so that the wages would be in-line with the wages

provided at another prison that housed women.  However, that allegation alone does not support the

inference that Defendants were aware that the wages would be less than those paid to men with

equivalent skills and job positions.

Plaintiff does allege that Defendants Bettencourt and Chenault were aware of a difference

in pay between male and female inmates.  However, it is unclear whether Bettencourt or Chenault

knew about the pay disparity before Plaintiff complained about it, or whether they were merely

responding to Plaintiff's complaints and assumed that Plaintiff's assertions about the existence of

the disparity were true.  In either case, Plaintiff has not alleged that Bettencourt or Chenault knew

about any pay disparity when they made the decision to cut wages at CCWF.  Accordingly, Plaintiff

has not alleged any facts that plausibly support the inference that the decision to cut wages at CCWF

was made with discriminatory intent or purpose.

The Court further notes that it is unclear whether any actual pay disparity exists.  Plaintiff

has not identified any specific male inmates who receive higher pay than the inmates at CCWF or

any male prisons that offer their inmates higher pay.  Plaintiff does not allege how she knows that

male inmates are paid more than female inmates.  The only factual allegation in support of an alleged

disparity in pay is Plaintiff's allegation that higher pay grades exist in the "Dictionary of

Occupational Titles," and Defendants do not allow any inmates at CCWF to receive those higher pay grades. However, nothing in Plaintiff's complaint supports the inference that male inmates at other prisons receive those higher pay grades. Plaintiff's conclusion appears to be entirely speculative.[2] Further, in order to support an equal protection claim, Plaintiff must allege facts that plausibly support the conclusion that similarly situated male inmates are receiving higher pay that the female inmates at CCWF. Plaintiff has not identified any class of similarly situated male inmates, or male inmates that possess similar skill sets and job duties compared to the female inmates at CCWF. Accordingly, the Court finds that Plaintiff has failed to support her claim for relief with adequate factual allegations. Plaintiff fails to state any cognizable equal protection claims against Defendants.

## B.   Retaliation Claims

Plaintiff claims that Defendants Chenault and Clayton retaliated against Plaintiff for filing grievances about her pay grade. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff alleges that Defendant Chenault threatened to fire Plaintiff from her job if she did not drop her administrative grievance. Plaintiff similarly alleges that Defendant Clayton verbally and physically intimidated Plaintiff during an interview by "getting in [her] face [and] telling [her

---

[2]Plaintiff does allege that Defendants Bettencourt and Chenault acknowledged the pay disparity when they told Plaintiff that the male inmates get paid more because "females don't have it hard like men do." However, as the Court noted previously, it is unclear whether Bettencourt and Chenault knew about the pay disparity or whether they were merely responding to Plaintiff's complaints and assumed that her assertions about the pay disparity were true.

that she] 'better drop the 602.'" (Am. Compl. 6, ECF No. 16.)  Although Plaintiff was not actually terminated from her job, "the mere <u>threat</u> of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1270 (9th Cir. 2009) (emphasis in original).  Plaintiff need not allege an explicit threat of harm – the threat of harm may be implied. <u>Id.</u>  Accordingly, the Court finds that Plaintiff states cognizable claims for relief against Defendants Chenault and Defendant Clayton for retaliating against Plaintiff's First Amendment right to file grievances against the government.

Plaintiff also alleges that Defendant Clayton authored a memorandum that directed other prison officials to remove all "lead" verbiage from the "Plant Operations Job Descriptions." (Am. Compl. 7, ECF No. 16.)  The change appears to be entirely semantic, as it occurred after Plaintiff had learned that her pay grade would not be raised.  Accordingly, the Court finds that the issuance of the memorandum and the removal of the "lead" verbiage from the job descriptions does not constitute "adverse action" within the meaning of a First Amendment retaliation claim.  Plaintiff has neither alleged that the exercise of her First Amendment rights was chilled by the removal of the "lead" verbiage, nor has she alleged a harm that is "more than minimal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 568 n.11 (9th Cir. 2005).

Finally, Plaintiff claims that Defendant Hubble removed Plaintiff from the plumbing shop "for retaliation for trying to coerce me to sign documentation that he believed pertained to the safety of my job; which I added a[sic] additional addendum stating 'under implied retaliation.'" (Am. Compl. 12, ECF No. 16.)  Plaintiff's allegations are vague and unclear.  Plaintiff has not alleged what the document said and does not explain why she refused to sign the document.  It is unclear what Plaintiff meant by "under implied retaliation."  The Court notes that if the document pertained to safety, Defendant Hubble's action would not be unconstitutional because "it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  Plaintiff fails to state any cognizable claims against Defendant Hubble.

## C.   <u>No Leave to Amend</u>

The Court is generally required to provide Plaintiff with notice of the deficiencies in her claims and an opportunity to amend her complaint in order to cure those deficiencies. <u>See Lopez v.</u>

1   Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend

2   should be granted even if no request to amend was made unless the court determines that the

3   pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d

4   1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless

5   it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).

6   However, the Court's previous screening order already informed Plaintiff of the deficiencies in her

7   equal protection claims and Plaintiff's second amended complaint fails to amend her complaint in

8   a way that meaningfully addresses those deficiencies. Accordingly, the Court will recommend that

9   Plaintiff's equal protection claims be dismissed without leave to amend. See Ferdik v. Bonzelet, 963

10  F.2d 1258, 1261 (9th Cir. 1992)(dismissal with prejudice upheld where court had instructed plaintiff

11  regarding deficiencies in prior order dismissing claim with leave to amend).

12          The Court notes that Plaintiff has not been given instructions regarding the deficiencies in

13  her retaliation claims because Plaintiff has made the factual allegations regarding retaliation for the

14  first time in her second amended complaint. Accordingly, the Court will provide Plaintiff with an

15  opportunity to amend her retaliation claims against Defendant Hubble. The Court will recommend

16  that this action proceed on Plaintiff's retaliation claims against Defendants Chenault and Clayton.

17  If Plaintiff intends to amend her claims against Defendant Hubble, she must file a motion requesting

18  leave to file an amended complaint within thirty days of the date of service of this Findings and

19  Recommendations. Otherwise, this action will proceed only on Plaintiff's claims against Defendants

20  Chenault and Clayton.

21  **IV.    Conclusion and Recommendation**

22          Plaintiff's complaint states cognizable claims against Defendants Chenault and Clayton for

23  alleged retaliation against Plaintiff's exercise of her First Amendment right to file grievances against

24  the government. However, Plaintiff does not state any other cognizable claims. Plaintiff was

25  provided with the opportunity to amend and her second amended complaint failed to remedy the

26  deficiencies in her equal protection claims. The Court finds that the deficiencies in Plaintiff's equal

27  protection claims are not curable by further amendment of her complaint.

28  ///

Accordingly, it is HEREBY RECOMMENDED that:

1.      This action proceed on Plaintiff's second amended complaint, filed on March 15, 2010, against Defendants Chenault and Clayton for retaliation against Plaintiff's exercise of her First Amendment rights; and

2.      Plaintiff's equal protection claims be dismissed for failure to state a claim.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:      November 1, 2010                           /s/ Sheila K. Oberto**
                                                  UNITED STATES MAGISTRATE JUDGE